

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ernest Guinn
County Attorney
El Paso County
El Paso, Texas

Dear Sir:

Opinion No. O-3548
Re: Validity of H. B. 364, 47th
Legislature, Acts 1941, and
related questions.

Your letter of July 8th, in which you request
the opinion of this department as to the validity of House
Bill No. 364, Forty-seventh Legislature, amending Article
2700, Revised Civil Statutes of Texas, upon request of
your County School Superintendent, has received the atten-
tion of this department. Section 1 of the Bill to which
our attention is drawn in your letter, reads as follows:

"Section 1. Salary of the County Super-
intendent.

"The elective County Superintendents shall
receive from the Available School Fund of their
respective counties annual salaries based on the
scholastic population of such counties as follows:

| Population | Amount |
|---|---|
| 3,000 or less | $1,800.00 |
| 3,001 to 4,000 | 2,000.00 |
| 4,001 to 5,000 | 2,200.00 |
| 5,001 to 6,000 | 2,400.00 |
| 6,001 to 7,000 | 2,600.00 |
| 7,001 to 8,000 | 2,800.00 |
| 8,001 to 9,000 | 3,000.00 |
| 9,001 to 12,000 | 3,200.00 |
| 12,001 to 15,000 | 3,400.00 |
| 15,001 to 30,000 | 3,600.00 |
| 30,001 to 40,000 | 3,800.00 |
| 40,001 to 50,000 | 4,200.00 |
| 50,001 and over | 4,800.00 |

"Provided, however, in counties having more
than thirty-five hundred (3500) scholastics and
less than eight thousand and one (8,001) scholas-
tics, where no supervisor is employed and where
the total expense for office assistants does not
exceed Eighteen Hundred Dollars ($1800) per annum,
the salary of the County Superintendent may be
set at a sum not to exceed Three Thousand Dollars
($3,000) per annum by action of the County Board
of Trustees.

"In making the annual budget for County
Administration expenses the County School Trus-
tees shall make allowance out of the State Avail-
able School Fund for salary and expenses of the
office of the County Superintendent and the same
shall be determined by the resident scholastic
population of the county. It shall be the duty
of the County Board of Trustees to file the budget
for county administration expense with the State
Department of Education on or before September
first of each scholastic year, the budget to be
approved and certified to by the President of the
County Board of Education and attested to by the
County Superintendent. The compensation herein
provided for shall be paid monthly upon the order
of the County School Trustees; provided that the
salary for the month of September shall not be
paid until the County Superintendent presents a
receipt from the State Superintendent showing
that he has made all reports required of him. The
County Superintendent, with the approval and the
confirmation of the County Board of Education,
may employ a competent assistant to the County
Superintendent at an annual salary not to exceed
Two Thousand Dollars ($2,000) and may also employ
such other assistants as necessary provided the
aggregate amount of the salaries of such other
assistants shall not exceed Twelve Hundred Dol-
lars ($1200) annually; and the County Board of
Education may make further provisions as it deems
necessary for office and traveling expenses of
the County Superintendent; provided that expen-
ditures for office and traveling expenses of the

County Superintendent shall not be less than
Three Hundred Dollars ($300) and not more than
Eight Hundred Dollars ($800) per annum, such ex-
pense shall first be proven by affidavit there-
for, and said Board is hereby authorized to fix
the salary of such assistants and pay same out
of the same funds from which the salary and ex-
penses of the County Superintendent are paid."

Since it is well settled in this State that the
Legislature, in the exercise of its power to provide compen-
sation of public officers and employees, may adjust the sal-
ary to be paid in proportion to the population of the area
which the officer serves, upon the theory that it is reason-
able to presume that the officer's duties are rendered more
of less onerous in proportion to the population, the Act in
its broad aspect appears to be clearly constitutional. The
only question of constitutionality which occurs to us is
with respect to the validity of the proviso, as against the
contention that it is a local or special law regulating the
affairs of counties.

It is to be observed that the classification made
by the proviso in question is threefold; one, scholastic
population; two, employment of supervisors; three, salary
paid assistants. Each of the conditions must concur in order
that the proviso may apply. If one effects an arbitrary dis-
crimination, the entire proviso must fall.

Within the thirty-five hundred (3500) to eight
thousand (8000) scholastics bracket, the county superintend-
ent of the county having six thousand five hundred (6500)
scholastics can be paid only Twenty-six Hundred Dollars
($2600) per annum, if he has a supervisor, or if he spends
more than Eighteen Hundred Dollars ($1800) per annum for
assistants. On the other hand, a superintendent of the
three thousand five hundred fifty (3550) scholastics county,
if he has no supervisor and spends less than Eighteen Hundred
Dollars ($1800) per annum for assistants, may be paid Three
Thousand Dollars ($3000) per annum; otherwise his salary is
fixed at Two Thousand Dollars ($2000) per annum. In other
words, of two counties within the population brackets fixed
by the proviso, it may develop that the superintendent of a
county of three thousand five hundred fifty (3550) scholastics

will receive Three Thousand Dollars ($3000) per annum, because the proviso applies to him, but a superintendent of a county having six thousand five hundred (6500) scholastics will be paid only Twenty-six Hundred Dollars ($2600) per annum because his county does not fall within the classification, other than that of scholastic population, set by the proviso.

The first question, therefore, is whether the basis chosen by the Legislature affords a reasonable ground for this discrimination as between counties within the population brackets fixed by the proviso. Differently stated, does the fact that the county has no supervisor and pays less than Eighteen Hundred Dollars ($1800) per annum for assistants indicate fairly and reasonably that the county superintendent should be paid a larger salary than may be paid a superintendent of a county of like or greater scholastic population which either has a supervisor or pays more than Eighteen Hundred Dollars ($1800) per annum for assistants. We cannot say that this discrimination is unreasonable and arbitrary. A reason suggesting itself to support the classification is this: the failure to have a supervisor, plus employment of assistants at aggregate salaries of less than Eighteen Hundred Dollars ($1800) per annum, may be taken as a reasonable indication that the county superintendent under such circumstances is required to perform more work than would be the case if his burdens were lightened by a supervisor and higher salaried, and therefore presumably more competent, assistants -- the authorized additional salary, up to the maximum of Three Thousand Dollars ($3000), represents compensation for such additional services, the extent of which, presumably, is to be taken into consideration by the board in fixing the amount of the salary increase to be allowed the county superintendent.

The next question which arises is whether there is an unreasonable discrimination involved in the failure of the Legislature to provide for similar salary increases under similar circumstances for county superintendents of counties of greater or lesser scholastic population than those embraced in the brackets of the proviso.

The fact that the proviso applies only to counties having scholastic population of not less than three thousand

five hundred ($500) nor more than eight thousand ($000) does not, in our opinion, constitute the proviso an unreasonable discrimination against the counties above and below the brackets. It is to be noted that superintendents in the brackets of the proviso cannot, even under the provisions of the proviso, be paid less than those in counties below the bracket, nor more than those in counties above.

It must be borne in mind that the Legislature has a wide discretion in determining the amount of compensation to be paid public officers and employees. In the instant situation, the salary to be paid superintendents of the counties within the brackets of the proviso will not, in any event, be less than that paid superintendents of counties of lesser population, nor more than that provided for counties of greater population. That being true, we think it immaterial that the Legislature, in the proviso, allowed the raising of such salaries under the circumstances indicated. If the salaries of superintendents in counties of from thirty-five hundred (3500) to eight thousand (8000) scholastics might be set by the Legislature at a flat Three Thousand Dollars ($3000) per annum ( and the power of the Legislature to do this cannot be disputed), we think that where the Legislature fixes the minimum salary in such brackets at an amount higher than that paid superintendents of counties of less population and lower than that provided for superintendents in counties of greater population, and allows an increase of salaries within such brackets to an amount not greater than the salary provided for counties of larger population, upon conditions such as those here provided, there is no arbitrary or unreasonable discrimination involved in the legislative failure to provide similar increases upon similar conditions for superintendents of counties of lesser or greater scholastic population.

It follows from what we have said above that we hold Section 1 of House Bill No. 364 to be constitutional.

Your second question is whether, under the provisions of the Act, the first assistant to the county superintendent may be paid an annual salary in excess of Two Thousand Dollars ($2000) and whether a second assistant may

be paid in excess of an annual salary of Twelve Hundred Dollars ($1200).

We concur with your opinion that House Bill No. 364 places an absolute limitation upon the amount that may be paid for salaries of assistants. The Act plainly provides that one assistant to the county superintendent may be paid an annual salary not to exceed Two Thousand Dollars ($2000). The Act also plainly provides that such other assistants as necessary may be employed, but that the aggregate amount of the salaries of such other assistants shall not exceed the total sum of Twelve Hundred Dollars ($1200) annually. It follows that the first assistant may be paid not to exceed Two Thousand Dollars ($2000) per annum as salary, and that not more than Twelve Hundred Dollars ($1200) in the aggregate may be expended for the annual salaries for such additional assistants as may be required and authorized.

By your supplementary letter of August 15, 1941, you ask the additional question, which we construe as follows: where the assistants to the county superintendent are required to work overtime in the office, and to return to the office on many occasions, thereby occasioning said assistants increased cost in transportation, may they be reimbursed for such increased transportation costs out of the Eight Hundred Dollars ($800) provided in House Bill No. 364 for traveling expenses?

It seems that what it is desired to do here is to reimburse the assistants for the expenses which they incur in coming from their homes to the office to do overtime work, and returning to their homes thereafter. If we are correct in this understanding, you are advised that such transportation expenses as may be incurred by the assistants in coming from their places of residence to the office to do their work is not a proper item of "traveling expenses", and the assistants cannot be reimbursed therefor from the traveling expense money provided by House Bill No. 364.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

R. W. Fairchild
Assistant

APPROVED SEP 10, 1941

Gerald C. Mann

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN